SANDRA DiBENEDETTO, Special Adm'r of the Estate of Scott A. DiBenedetto, Deceased, Plaintiff-Appellant, v. FLORA TOWNSHIP, Defendant-Appellee.

Second District   No. 2—90—0762

Opinion filed October 18, 1991.

GEIGER, J., dissenting.

Gregory E. Barrett, of Schlueter, Ecklund, Olson, Barrett & Moore, of Rockford, for appellant.

Joette S. Doran and Sarah Hansen Sotos, both of Knight, Hoppe, Fanning & Knight, of Des Plaines, and Kathryn M. James, of Judge & James, Ltd., of Chicago, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Sandra L. DiBenedetto, as special administrator of the estate of Scott A. DiBenedetto, deceased, appeals from an order of the circuit court of Boone County which dismissed with prejudice her complaint against defendant, Flora Township. The issue raised

on appeal is whether the trial court erred in dismissing plaintiff's amended complaint for failure to state a cause of action in accordance with section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—615).

On January 12, 1990, plaintiff filed her amended complaint containing the following allegations: that defendant is a municipal corporation located in Boone County, Illinois, which owns and maintains a system of township roads, highways and rights-of-way within its boundaries, including Wheeler Road; that on or about January 25, 1989, plaintiff's decedent was operating a motor vehicle traveling south on Wheeler Road, in Flora Township, south of the intersection of Wheeler Road and Cherry Valley Road; that driving conditions were wet, and there was dense fog and complete darkness; that there were no street or highway lights in this area; that the vehicle operated by plaintiff's decedent entered the shoulder area on the east edge of the paved portion of the road and immediately overturned onto its roof killing the decedent; that at and near the area of the occurrence, Wheeler Road has a width of only 18 feet, a speed limit of 55 miles per hour and no center line or other lane markings; that approximately five to seven feet from the east edge of the paved portion of the road, on the shoulder portion of the road, for a distance of approximately one-quarter of a mile in the area of the occurrence, a deep ditch runs parallel to the pavement of the road; that the ditch drops at a 45- to 90-degree angle off the shoulder of the road and is five to six feet in depth; and that the ditch is entirely within the Wheeler Road right-of-way owned and maintained by defendant.

The amended complaint further alleged that defendant was negligent in that it:

"a. Maintained its right-of-way on Wheeler Road in such a manner as to place or permit to be placed a ditch on its said right-of-way which ditch is a danger to traffic using Wheeler Road by reason of its severe dropoff [sic] and extreme close proximity to the east edge of the pavement of Wheeler Road.

b. Failed to remedy or correct the condition created in its right-of-way along said Wheeler Road by the existence of said ditch.

c. Failed to erect a suitable guard rail [sic] or barricade to protect traffic using Defendant's right-of-way from injury or death from entering said ditch despite the reasonable foreseeability that some persons operating vehicles along Wheeler

Road and its right-of-way may enter the area of the right-of-way upon which the ditch is located.

d. Failed to provide suitable and adequate warning to the motoring public of the existence of said ditch and the hazard attendant therewith."

It was also alleged that, prior to the occurrence involving plaintiff's decedent, at least one accident had occurred wherein a car had entered the same ditch and that complaints had been made to defendant about the existence of the ditch.

Plaintiff sought damages for the alleged wrongful death of the decedent under the provisions of section 2 of the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 2).

Defendant filed a motion to strike and dismiss the amended complaint pursuant to section 2—615 of the Code. A hearing was held regarding defendant's motion. No transcript of the hearing has been included in the record. However, the memorandum of decision prepared by the trial court states that plaintiff elected to withdraw her allegations of negligence contained in paragraph 9(c) of the amended complaint (failure to erect a guardrail or barricade) and paragraph 9(d) of the amended complaint (failure to warn). Plaintiff acknowledges this in her appellate brief.

The trial court noted in the memorandum of decision that the complaint does not allege that the paved roadway in question is other than straight, flat and in good physical condition. As the only hazard alleged was the existence of a deep ditch and its proximity to the roadway, the court concluded that the magnitude of the duty which would be imposed on defendant to prevent this type of hazard outweighed the other relevant factors in making a duty determination. The court stated:

"Plaintiff in her brief concedes that it would be absurd to require that all ditches be removed from rural roads. Yet she states that a township would still be liable 'for a ditch *** on its property which a jury finds presents a foreseeable risk of harm to persons using its roadway.' But this would be every ditch into which a motorist might drive if he left the roadway while blinded by weather conditions. In my judgment, this burden is simply too onerous to justify the imposition of a duty."

An order was entered June 19, 1990, dismissing the amended complaint with prejudice.

Plaintiff contends on appeal that the dismissal of her amended complaint was error because the trial court improperly based its de-

cision on the "onerous consequences on the township if a duty were to be imposed," rather than on the foreseeability of the occurrence alleged. Plaintiff asserts that the trial court, without evidence, could not properly conclude the nature and extent of the onerous consequences upon the Township and, therefore, could not determine as a matter of law that a duty should not be imposed in this situation. Plaintiff argues that the pertinent case law provides that a municipality's duty to keep its streets, sidewalks and parkways in a reasonably safe condition is not limited, but extends to any part or portion thereof immediately adjacent thereto. Plaintiff cites *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 450, *Hennigs v. Centreville Township* (1973), 56 Ill. 2d 151, 154, *Long v. Friesland* (1988), 178 Ill. App. 3d 42, 51, *Predny v. Village of Park Forest* (1987), 164 Ill. App. 3d 688, 697-98, and *Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, in support of her position. Plaintiff further maintains that a duty should be imposed here because it was reasonably foreseeable that cars would be occupying the shoulder of the road. She contends that this is true, especially when "weather conditions affecting visibility" exist, because the road is "rather narrow" and the road surface itself is not marked.

Defendant responds that since the decedent was southbound on Wheeler Road and overturned in a ditch on the east edge of the road, the decedent obviously crossed onto the opposite lane of traffic and went off the opposite side of the road and into the ditch. Defendant contends that such occurrence is not reasonably foreseeable. Defendant further opines that the cases cited by plaintiff as imposing a duty on the township are distinguishable from the facts of this case. Defendant contends that those cases involved an unusual, unreasonably dangerous roadway condition such as: a traffic island projecting 5½ feet into the east lane of the street (*Janssen*, 79 Ill. 2d at 438); a pile of gravel along a township road in a publicly owned area frequented by pedestrians and cyclists which caused the pedestrians to trip and fall (*Hennigs*, 56 Ill. 2d at 152); "an unsigned and hilly road which was not wide enough for two oncoming cars to pass each other safely and/or which was overhung by brush forcing drivers to drive near the center of the road and obscuring their vision" (*Long*, 178 Ill. App. 3d at 51-52); and a bicycle path hidden by bushes at the point where it intersected a service driveway of a shopping center (*Predny*, 164 Ill. App. 3d at 690). Defendant takes the position that no such unusual or unreasonably dangerous road condition was involved in this case.

In considering the law applicable to defendant's motion, we note that a cause of action should be dismissed on the pleadings only if it is clearly apparent that no set of facts can be proved which will entitle the plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504.) When the legal sufficiency of a complaint is challenged by a section 2—615 motion to strike or dismiss, all well-pleaded facts in the complaint must be taken as true, and "a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted." *Burdinie*, 139 Ill. 2d at 505.

"A complaint for common law negligence must set forth the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from that breach." (*Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 373; see also *Dinges v. Gabardi* (1990), 202 Ill. App. 3d 732, 735.) In this case, brought under the Wrongful Death Act, it is necessary that the complaint plead the duty owed by defendant to plaintiff's decedent. (See *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180, 188.) "A duty requires a person to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm." *Widlowski*, 138 Ill. 2d at 373.

Whether a duty existed is a question of law, and depends upon whether the parties stood in such a relationship to one another that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 47.) In considering whether a duty exists in a particular case, a court must weigh the foreseeability that defendant's conduct will result in injury to another and the likelihood of an injury occurring, against the burden to defendant of imposing a duty, and the consequences of imposing this burden. (*Ziemba*, 142 Ill. 2d at 47.) A duty is owed where the occurrence involved is reasonably foreseeable. An occurrence is reasonably foreseeable if a reasonably prudent person could have foreseen the events which did transpire. If those events are "highly extraordinary" (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376) or "tragically bizarre" or "unique," then the occurrence is not reasonably foreseeable. *Cunis*, 56 Ill. 2d at 380-81 (Goldenhersh, J., dissenting).

■ We believe it is reasonably foreseeable that the condition of the road's shoulder as alleged in the amended complaint, when combined with other factors, could result in injury to a motorist operating a vehicle on such shoulder. Examples of such factors would be a

motorist deviating from the roadway due to illness or drowsiness, a tire defect, motor problems, or adverse weather conditions. Based on common experience, it is clear that one purpose of a highway shoulder is to permit motorists to deviate from the paved portion for any one of many reasons normally incident to vehicular travel. We do not consider the singular event of a motorist deviating from the paved portion of the roadway to the opposite lane's shoulder to be "highly extraordinary," "tragically bizarre," or "unique." In the case of *Michalak v. County of La Salle* (1984), 121 Ill. App. 3d 574, the court found a duty existed on the part of the county to use reasonable care in the maintenance of a guardrail alongside a paved highway even though plaintiff drove off the opposite side of the road and into the guardrail. Consequently, we conclude that defendant's conduct of improperly maintaining the highway shoulder, as alleged in the complaint, could foreseeably result in injury to a motorist, such as plaintiff's decedent, operating his vehicle on the shoulder.

We will next examine relevant public policy considerations in order to evaluate the burden and consequences of imposing a duty of proper maintenance on defendant. Courts generally focus on public policy considerations when it comes to ascertaining when a duty exists in a given situation. *Robinson v. The Suitery, Ltd.* (1988), 172 Ill. App. 3d 359, 363.

■■ ■ The public policy regarding Illinois' highway system is essentially set forth in section 1—102 of the Illinois Highway Code (Code) (Ill. Rev. Stat. 1987, ch. 121, par. 1—102). The section constitutes a comprehensive statement of the many facets of legislation applicable to most public highways used for vehicular traffic. Section 1—102 provides, in part, that an integrated system of highways and streets is essential to the general welfare and to the agricultural, industrial, recreational and social development of the State and that accident reduction and safety is an urgent problem and proper objective of highway legislation. The Code provides for the construction, maintenance, and financing of the highway system and places responsibility for same on the State, counties, municipalities and road districts. It is evident from the Code that securing a workable system of highways is a high priority of government. This priority is reflected in the vast amount of highway construction and maintenance work which is evident throughout the year to all Illinois motorists. Upon consideration of the facts alleged in the complaint before us, in light of the Code's strong public policy statements and procedures for the construction, maintenance and

financing of a system of highways, we cannot say that the burden and consequences of a duty of maintenance of the shoulder of highways would be onerous based upon the limited facts contained in the complaint.

The cases cited by Flora Township in support of its argument that it has no duty to maintain the shoulders of the highway under the facts set forth in the complaint are not persuasive. Defendant cites *Battisfore v. Moraites* (1989), 186 Ill. App. 3d 180, *Kavanaugh v. Midwest Club, Inc.* (1987), 164 Ill. App. 3d 213, and *West v. Faurbo* (1978), 66 Ill. App. 3d 815. We find defendant's authority inapposite to the case before us because they essentially concern privately owned property which abuts a public highway and the nature and extent of the owner's duty to maintain such property to prevent injury to vehicle operators who deviate from the highway onto the private property. The cited cases are not controlling on the nature and extent of the duty owed by a local governmental unit to maintain its road system for use by the motoring public.

As related above, a complaint in negligence must include an allegation that defendant's negligent conduct proximately caused plaintiff's injury. (*Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 373.) Flora Township claims that the plaintiff did not plead a proximate cause connection between the conditions of the ditch and the accident. Specifically, defendant states the complaint fails to indicate the cause for plaintiff's car driving off the paved portion of the road onto the shoulder opposite the car's direction of travel.

■■ The question of proximate cause is normally an issue for the jury. (*Kinsch v. Di Vito Construction Co.* (1964), 54 Ill. App. 2d 149.)

> " ' "Proximate cause" is a term of art which encompasses the distinct concepts of cause in fact and legal cause. Determining whether the defendant's conduct was a cause of plaintiff's injury involves nothing more than an analysis of the facts. Once it is established that the defendant's conduct has in fact been a cause of the injury, however, there remains the question whether the defendant should be legally responsible for what he has caused. As otherwise stated, the question is whether the policy of the law will extend defendant's responsibility to the consequences which have in fact occurred.
>
> Two tests are generally applied in determining the issue of causation in fact. Under the "substantial factor" test, the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. Un-

der the second test, commonly called the "but for" rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. [Citations.]' " *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 89, quoting *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333.

For purposes of the cause-in-fact component of proximate cause, the complaint alleges that the defendant's unreasonable maintenance of the ditch on the shoulder of the road was the proximate cause of plaintiff's decedent's automobile turning over and the driver's resultant injuries and death. Defendant's argument concerning a failure of the amended complaint to plead proximate cause is premised on the assumption that plaintiff's complaint must state facts showing why he left the paved roadway. However, we believe that one permissible inference from the facts alleged in the complaint is that weather conditions, *i.e.*, wet roads and/or dense fog, and/or darkness, caused plaintiff's decedent to deviate off the paved portion of the road. Weather conditions can constitute one of numerous events reasonably foreseeable to defendant which would cause a motorist to leave the paved portion of a roadway and access the shoulder of the road area. Defendant relies on *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, and *Sheehan v. Janesville Auto Transport* (1981), 102 Ill. App. 3d 507, for the proposition that obstructions in or near the highway are merely conditions and not the legal or proximate cause of injury. In *Long*, plaintiff motorist crested a hill and lost control of his automobile's movement due to icy road conditions. While out of control the car collided with defendant's vehicle, which was stopped downhill partly on the roadway. The court reasoned that the placement of defendant's vehicle could not be a proximate cause because plaintiff's inability to control his car on the icy roadway was the sole cause of the collision. In *Sheehan*, plaintiff motorist struck a car parked in a designated, no parking zone, when he swerved to avoid an oncoming car which suddenly swerved into his path. In ruling that defendant's parked car was not a proximate cause, the court reasoned that defendant's parked car did not cause the other car to swerve into plaintiff's path or cause plaintiff to swerve and strike a parked vehicle. The court further concluded that the fact defendant was parked in a no parking zone was of no consequence because the purpose of the ordinance establishing such zone was to facilitate the flow of traffic through the area and was therefore unrelated as a cause of the occurrence. In *Long* and *Sheehan*, the operator's loss of control of the vehicle's movement was found to be the sole proximate cause of the

respective collisions. However, in the case before us, a reasonable fact finder could infer from the facts alleged in the complaint that plaintiff's decedent was in control of his automobile's movement when he drove onto the opposite shoulder of the road.

Further, we find persuasive the *Michalak* court's reasoning on the determination of proximate cause in the context of a remote cause or independent condition since the adoption of the doctrine of comparative negligence in Illinois (see *Alvis v. Ribar* (1981), 85 Ill. 2d 1).

As pointed out (see *Michalak*, 121 Ill. App. 3d at 578) under the common-law doctrine of contributory negligence, the concept of remote cause or condition as part of the proximate cause analysis prevented the injustice that would result if an actor who created a condition of injury were liable for the full measure of damages even for acts remotely connected with the injury. With the adoption of comparative negligence in Illinois, the harsh effects of denying any recovery to an injured plaintiff were ameliorated when the superseding negligence of the defendant nullified the negligence of the plaintiff. Therefore, the need is diminished for a policy which protects the remotely negligent defendant from liability for the full measure of damages or for a policy that ameliorates the harsh effects of contributory negligence of the plaintiff. Cognizant of the changes wrought by the adoption of the doctrine of comparative negligence, courts have been less willing to label an actor's conduct as a remote cause or condition of injury.

"Cases in which, prior to the adoption of comparative negligence, plaintiff might have lost under proximate cause rules, because the acts of plaintiff or a third part[y] [was] regarded as a 'supervening cause,' [might be reconsidered] because [the court] can [now] reach a 'fair' decision by apportioning some of the blame to [the] defendant and some to third parties or to the plaintiff himself." V. Schwartz, Comparative Negligence §4.3, at 81-82 (1974).

Flora Township's conduct is not so remote from the events leading to the death of plaintiff's decedent that it can be said as a matter of law that maintaining a ditch six feet deep with a 90-degree drop-off five feet from the edge of the paved roadway was not a contributing cause of the death of plaintiff's decedent.

As a final matter, since this case involves the various duties owed by a local governmental unit, we must consider the effect of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a)). Our supreme court recently held that, even if not addressed

in the trial court, "the Tort Immunity Act should control in any analysis of whether plaintiff's complaint states a cause of action." (*Burdinie*, 139 Ill. 2d at 510-11.) In *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, the court noted that the obligation of a local government "to maintain public highways within its boundaries in a safe condition" is codified in section 3—102 of the Tort Immunity Act. (*Janssen*, 79 Ill. 2d at 450.) The language of this section demonstrates the intention of the legislature to continue the common-law liability of a local government for failure to maintain its streets in a reasonably safe condition, provided the governmental entity has actual or constructive notice of the defect in time to have corrected the condition. (See *Horton v. City of Ottawa* (1976), 40 Ill. App. 3d 544, 548.) The Tort Immunity Act adopted the general principle that local governmental units may be liable in tort but placed limits on such liability with an extensive list of immunities based on specific governmental functions. *Burdinie*, 139 Ill. 2d at 506.

We note that, although defendant in this case has not raised the issue of immunity in its appellate brief, it apparently argued before the trial court that section 3—105(a) of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—105(a)) protected it from liability. The section provides:

"(a) Neither a local public entity nor a public employee is liable for an injury caused by the effect of weather conditions as such on the use of streets, highways, alleys, sidewalks or other public ways, or places, or the ways adjoining any of the foregoing ***. For the purpose of this section, the effect of weather conditions as such includes but is not limited to the effect of wind, rain, flood, hail, ice or snow but does not include physical damage to or deterioration of streets, highways, alleys, sidewalks, or other public ways or place or the ways adjoining any of the foregoing ***." Ill. Rev. Stat. 1989, ch. 85, par. 3—105(a).

Under section 3—105(a) a local public entity is not liable for injuries which result from the effect of weather conditions, in and of themselves, on the use of streets and sidewalks. (See *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 572; *Enriquez v. City of Chicago* (1989), 187 Ill. App. 3d 1110, 1115; *Bellino v. Village of Lake in the Hills* (1988), 166 Ill. App. 3d 702, 708.) A municipality, therefore, cannot be liable for an injury caused only by weather conditions. As the amended complaint is factually postured, we cannot say that *only* a condition of the weather was the proximate

cause of the occurrence resulting in the death of plaintiff's decedent. Consequently, defendant is not relieved of liability by the Tort Immunity Act.

For the foregoing reasons, we find that the amended complaint against defendant was improperly dismissed.

The judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN, J., concurs.

JUSTICE GEIGER, dissenting:

I respectfully dissent. In this case, the plaintiff's decedent was killed in an automobile accident that occurred under wet driving conditions late in January; dense fog and complete darkness further complicated the circumstances. Under these extreme driving conditions, the decedent's plaintiff's car crossed over the opposite lane of a 55-mile-per-hour highway and overturned.

Based on those facts I, unlike the majority, find this case to be analogous to *Long v. Soderquist* (1984), 126 Ill. App. 3d 1059, 1064. In *Long*, we affirmed summary judgment for the defendants, finding that it was undisputed that the plaintiffs' vehicle had slipped on an icy bridge at the crest of a hill and was therefore out of control when it collided with the defendants' standing automobiles. (126 Ill. App. 3d at 1064.) Thus, we found that regardless of their precise placement, the defendants' vehicles could not have been a proximate cause of the collision.

Given the harsh driving conditions here, plus the fact that the decedent driver's automobile crossed over a lane of traffic and a five- to seven-foot-wide shoulder before it came to the township's steep ditch, I cannot agree with the majority's observation that a reasonable fact finder in this case could infer that the plaintiff's decedent was in control of his automobile's movement when he drove onto the opposite shoulder of the road. Rather, I would find that the record shows as a matter of law that the decedent's automobile was out of control before it reached the ditch. The ditch here, like the defendants' automobiles in *Long*, was a mere condition connected with the accident, not a proximate cause. Accordingly, I would affirm the trial court's dismissal with prejudice.