513 S.E.2d 170

**Kevin C. HARRIS, Appellant,**

v.

**R.A. MARTIN, INC., Appellee.**

No. 24998.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1998.

Decided Dec. 15, 1998.

---

J. Michael Ranson, Esq., Cynthia Morrone Salmons, Esq., Leslie R. Stotler, Esq., Ranson Law Offices, Charleston, West Virginia, Attorney for the Appellant.

Richard E. Rowe, Esq., Lisa Tackett, Esq., Goodwin & Goodwin, Charleston, West Virginia, Attorney for the Appellee.

PER CURIAM:

This case is before this Court upon an appeal of a final order of the Circuit Court of Jackson County entered on July 31, 1997. The appellant, Kevin Harris, a summer employee for the City of Ripley, sustained injuries when a garbage dumpster fell on his leg. He instituted an action against the appellee, R.A. Martin, a construction company, alleging that it was negligent in placing heavy construction materials in the dumpster. Pursuant to the July 31, 1997 order, the circuit court entered summary judgment in

favor of the appellee. In this appeal, the appellant contends that the circuit court erred by finding that the appellee owed him no legal duty of care.

This Court has before it the petition for appeal, all matters of record, and the briefs and argument of counsel. For the reasons discussed below, the final order of the circuit court is reversed, and this case is remanded.

## I. Facts

In August 1994, the appellant was employed as a summer worker for the City of Ripley. While helping with the city garbage collection, the appellant was injured as he attempted to position a garbage dumpster for emptying. The dumpster which contained several large blocks of concrete on top of trash tilted forward and fell on the appellant's leg, pinning him between the dumpster and the pavement. As a result, the appellant suffered a broken ankle.

An investigation into the accident revealed that the blocks of concrete had been placed in the dumpster by employees of the appellee, a contractor hired by the Jackson County Board of Education to repair tennis courts located in the Ripley City Park.[1] The dumpster at issue was located about ten yards from the swimming pool in the park and was intended for swimming pool use only. The evidence indicated that the appellee had not been given permission to place concrete or any kind of heavy construction materials in the City's dumpsters. In addition, an ordinance of the City of Ripley specifies that it is "unlawful for any unauthorized person to dispose of refuse, trash, garbage or any other materials in, at or near a commercial dumpster owned or serviced by the City."[2]

After the accident, the appellant sued the appellee alleging that it was negligent in placing the construction material in the dumpster. Subsequently, the appellee moved for summary judgment on the basis that it owed no duty to the appellant. On July 31, 1997, the circuit court granted summary judgment in favor of the appellee finding that "in the absence of extraordinary circumstances, a person who disposes of non-hazardous materials in a dumpster has no duty to dispose of those materials in such a way as to assure that a worker emptying the dumpster avoids injury and that no extraordinary circumstances were present in this case."

## II. Standard of Review

On numerous occasions, we have indicated that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syllabus Point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). *See also* Syllabus Point 4, *Dieter Eng'g Servs., Inc. v. Parkland Dev., Inc.,* 199 W.Va. 48, 483 S.E.2d 48 (1996); Syllabus Point 1, *Smith v. Stacy,* 198 W.Va. 498, 482 S.E.2d 115 (1996). Pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, summary judgment is required when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In Syllabus Point 3 of *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also* Syllabus Point 3, *Evans v. Mutual Mining,* 199 W.Va. 526, 485 S.E.2d 695 (1997); Syllabus Point 1, *McClung Invs., Inc. v. Green Valley Community Pub. Serv. Dist.,* 199 W.Va. 490, 485 S.E.2d 434 (1997). We have also observed that:

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential

---

1. Ripley City Park is located on property leased to the City by the Jackson County Board of Education.

2. The ordinance further states that an " 'unauthorized person' includes any person who is not the owner, agent or employee of the business, organization or institution for which the dumpster has been supplied and which is being billed for the servicing of the same and who is not acting with the express permission of any such owner, agent or employee."

element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). *See also* Syllabus Point 2, *Cottrill v. Ranson,* 200 W.Va. 691, 490 S.E.2d 778 (1997); Syllabus Point 2, *McGraw v. St. Joseph's Hosp.,* 200 W.Va. 114, 488 S.E.2d 389 (1997).

In *Williams,* we clarified the function of the circuit court at the summary judgment stage. We explained that the circuit court is not " 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " 194 W.Va. at 59, 459 S.E.2d at 336 (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)). Consequently, any permissible inference from the underlying facts must be drawn in the light most favorable to the party opposing the motion. *Painter,* 192 W.Va. at 192, 451 S.E.2d at 758. "Summary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.' " *Williams,* 194 W.Va. at 59, 459 S.E.2d at 336 (*quoting Pierce v. Ford Motor Co.,* 190 F.2d 910, 915 (4th Cir.), *cert. denied,* 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951)).

### III. Existence of Duty

■ The establishment of a *prima facie* case of negligence requires a showing that a defendant is guilty of some act or omission in violation of a duty owed to the plaintiff. *See* Syllabus Point 1, *Parsley v. General Motors Acceptance Corp.,* 167 W.Va. 866, 280 S.E.2d 703 (1981). In this case, the appellant contends that the circuit court erred by finding that the appellee owed him no duty of care. We agree.

■ In *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983), we discussed the modern trend of expanding the concept of duty in tort cases. In Syllabus Point 1 of *Robertson,* we stated that "[t]he liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injur [sic] another." In this regard,

we explained that "[i]t is well-established that one who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Syllabus Point 2, *Robertson.* We further explained that " '[Duty]' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk." 171 W.Va. at 611, 301 S.E.2d at 567, *quoting* W. Prosser, *The Law of Torts,* § 53 (4th ed. 1971). While the existence of a duty is defined in terms of foreseeability, it also involves policy considerations including "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant." *Id.*

■ As we stated in Syllabus Point 3 of *Sewell v. Gregory,* 179 W.Va. 585, 371 S.E.2d 82 (1988):

The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Pursuant to the *Sewell* standard, the inquiry must focus upon the extent to which the appellant could have reasonably foreseen that bodily injury could occur due to his actions. As Justice Cardozo succinctly noted, "[t]he risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928). In addressing such issues of foreseeability in *Johnson v. Mays,* 191 W.Va. 628, 447 S.E.2d 563 (1994), we explained that questions of the foreseeability that harm may result from placing gasoline in an unlabeled container at the request of ten-year old boys were questions of fact for the jury. *Id.* at 634, 447 S.E.2d at 569.

■ The appellee argues that it owed no duty to the appellant in connection with the toppling dumpster based on *Robinson v. Sui-*

*tery, Ltd.,* 172 Ill.App.3d 359, 122 Ill.Dec. 307, 526 N.E.2d 566 (1988). In *Robinson,* the plaintiff cut her hand on a piece of glass as she attempted to dispose of trash in a commercial dumpster shared by tenants of a mini-mall. The plaintiff filed suit against another business located at the mall for negligent disposal of fluorescent light tubes. The court held that the user of a commercial dumpster did not owe a duty to the plaintiff because the glass tubes were disposed where they should have been, in the garbage dumpster.

The case *sub judice* differs from *Robertson* in two factual respects. First, there are genuine issues of fact with regard to whether the appellee had permission to use the dumpster in question. There are in fact allegations that the appellee may have violated an ordinance by using the dumpster. Secondly, the *Robinson* court sought to avoid imposing a duty on those permissibly using a dumpster to take extraordinary measures.

Furthermore, we decline to follow the Illinois court's reasoning in *Robinson* because it differs from *Robertson* in a significant legal respect. It appears that Illinois courts, in determining whether a duty was owed by a defendant, place little weight on whether the plaintiff's injury was foreseeable. While the *Robinson* court recognized that "foreseeability is only one element in the determination of duty," the court also indicated that "[f]oreseeability of harm 'does not enter into the process' of critical inquiry 'into the true basis of duty.' " The court concluded that "[t]he courts generally focus on public policy considerations when it comes to ascertaining whether a duty exists in a given situation." 122 Ill.Dec. 307, 526 N.E.2d at 568 (citation omitted).

### IV.  Jury Question

■ In West Virginia, we have repeatedly held that the existence of a defendant's duty is generally a question of fact for jury determination. We stated as follows in Syllabus Point 5 of *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964):

> Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such

issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.

*In accord,* Syllabus Point 6, *McAllister v. Weirton Hosp. Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983); Syllabus Point 1, *Ratlief v. Yokum,* 167 W.Va. 779, 280 S.E.2d 584 (1981); Syllabus Point 17, *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990). We believe this rule is applicable in this case.

■ We have also explained that "[d]ue care is a relative term and depends on time, place, and other circumstances. It should be in proportion to the danger apparent and within reasonable anticipation." Syllabus Point 2, *Johnson v. United Fuel Gas Co.,* 112 W.Va. 578, 166 S.E. 118 (1932). In Syllabus Point 1 of *Dicken v. Liverpool Salt & Coal Co.,* 41 W.Va. 511, 23 S.E. 582 (1895), we explained that "[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person." Thus, those aspects of relativity and irresolution compel jury determination.

We conclude that the circuit court improvidently granted summary judgment in favor of the appellee. The record indicates that the appellee placed heavy construction materials on the top of a full dumpster, near the front, making it top-heavy. The evidence suggests although the appellee was performing work for the City, it did not have permission to use the dumpster which was obviously intended for use by persons at the swimming pool. The appellant was a City employee paid to assist in the emptying of dumpsters. Viewing the facts in the light most favorable to the appellant, we believe the appellee could have reasonably foreseen that an overloaded, top-heavy dumpster would pose a risk of harm to a city employee whose job involves emptying dumpsters. At a minimum, the record reveals genuine issues of material fact regarding the existence of a duty, precluding summary judgment.

Thus, we conclude that the trial court erred in ruling that the appellee owed no duty to the appellant. Accordingly, the final

order of the Circuit Court of Jackson County is reversed, and this case is remanded for further proceedings.

Reversed and Remanded.

Justice McGRAW did not participate in the decision of this case.

MAYNARD, Justice, dissenting:

I dissent because I agree with the trial court's determination that the appellee owed the appellant no legal duty of care.

I am told that down in the Mother State of Virginia, at Charlottesville, beginning law students at the University of Virginia College of Law are introduced to the law of torts by being taught the "Four Ds" of a tort: Duty, Dereliction, Damage and Direct Cause.[1] The majority opinion errs by deviating from this revered formula.

The determination of whether a tort exists begins by answering the threshold question whether the alleged tortfeasor owes any duty of care. If the answer to this question is in the negative, the analysis is at an end, and it is determined that no tort has been committed. The majority correctly states that the existence of a duty, although defined in terms of foreseeability, also involves policy considerations including "the likelihood of injury, the magnitude of the burden of guarding against it, and the consequence of placing that burden on the defendant." *Quoting Robertson v. LeMaster,* 171 W.Va. 607, 611, 301 S.E.2d 563, 567 (1983). However, the majority thereafter discards these other important considerations and decides this case entirely on the basis of foreseeability. While the majority criticizes the Illinois case of *Robinson,* stating that it places too little weight on foreseeability, the majority proceeds to make foreseeability the totality of its analysis of the existence of a duty. Courts have traditionally recognized that,

A line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting to impose new duties and, concomitantly, liabilities, regardless of the economic and social burden. Thus, the courts have generally recognized that public policy and social considerations, as well as foreseeability, are important factors in determining whether a duty will be held to exist in a particular situation.

57A Am.Jur.2d *Negligence* § 87, p. 143 (1989) (footnotes omitted). The majority, however, ignores public policy and social considerations. In so doing, it unquestioningly embraces "the modern trend of expanding the concept of duty in tort cases." In fact, the majority so expands the element of duty, that its existence now becomes almost a given in any tort case. If a party is injured by the conduct of another, there must have been a duty to avoid such conduct.

The majority's incomplete analysis of the existence of a duty does damage to our law of torts and raises some serious questions. Obviously, we live in a society that produces vast amounts of trash, and the daily necessity of discarding trash is common to all from private homeowners and small businesses to the largest companies. People and businesses routinely toss things like broken glass, splintered wood, nails, sharp metal, pressurized hairspray cans, etc., into dumpsters. This is the purpose of dumpsters. In the aftermath of this decision, is everyone who places trash in a dumpster liable if someone is injured by their trash? If the element of foreseeability is the sole consideration in determining the existence of a duty, the troubling answer to this question is yes. This unreasonably burdens the average homeowner who must now carefully categorize, separate, sort, and dispose of his or her trash in a way that forecloses any possibility that someone could be injured by it.

Also, the majority opinion, by making contradictory statements, confuses the law concerning who decides whether a duty exists. The majority states, "[i]n West Virginia, we

---

1. This information is courtesy of Howard M. Persinger, Jr., attorney at law and graduate of the University of Virginia College of Law. I acquired this knowledge from Howard at the expense of suffering Howard's slight air exhibit-ed by those who curiously feel they have the benefit of a superior legal education, a trait not uncommon among graduates of that venerable institution.

have repeatedly held that the existence of a defendant's duty is generally a question of fact for jury determination." Conversely, this Court has also repeatedly stated, however, that "[t]he determination of whether the plaintiff is owed a duty of care by the defendant must be rendered as a matter of law by the court." *Jack v. Fritts*, 193 W.Va. 494, 498, 457 S.E.2d 431, 435 (1995), *citing Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 870, 280 S.E.2d 703, 706 (1981). *See also Miller v. Whitworth*, 193 W.Va. 262, 265, 455 S.E.2d 821, 824 (1995) ("We are mindful that the determination of whether there is a duty is a question of law and **not a question of fact for the jury.**" (Citation omitted)); and *Yourtee v. Hubbard*, 196 W.Va. 683, 474 S.E.2d 613 (1996). Also, legal commentators agree that "the determination of any question of duty ... has been held to be an issue of law for the court rather than for the jury, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law." 57A Am.Jur.2d *Negligence* § 86, p. 142 (1989) (footnotes omitted). Well now, which is it? Is the existence of a duty a question of law for the court or a question of fact for the jury? The majority's holding leaves circuit courts and lawyers asking whose responsibility it is to determine the existence of a duty in a tort case. I am now puzzled and ask the same question.

Finally, if there is a culprit in this case who should be liable for the appellant's injury, it is the manufacturer of the dumpster. Dumpsters are made to hold all manner of heavy materials. The dumpster at issue should not have tipped over simply because construction materials were placed in it. The fact that it did so may indicate a design defect.

In conclusion, I agree with the circuit court's finding that "in the absence of extraordinary circumstances, a person who disposes of nonhazardous materials in a dumpster has no duty to dispose of those materials in such a way as to assure that a worker emptying the dumpster avoids injury and that no extraordinary circumstances were present in this case." Therefore, I would affirm the circuit court's order granting summary judgment to the appellee. In reversing that order, the majority unreasonably expands the concept of duty in tort law and adds ambiguity to the law of who determines the existence of duty in the first instance. Accordingly, I respectfully dissent.

I am authorized to state that Justice McCUSKEY joins in this dissent.